Good morning, Your Honors. Jay Nelson on behalf of Alex Tejeda. I'll do my best to watch my own clock and I'll try to reserve about two minutes for rebuttal. Based on the briefing, it seems to me that the primary dispute between the parties is this question of principal liability. By that I mean, excuse me, by that I mean whether the court should find beyond a reasonable doubt that the jury would have convicted Mr. Tejeda on a theory of principal liability for distributing the heroin to Johnson. Now, rather than repeat what's in the briefing, I'd like to, if I could, emphasize a couple of nuances both legal and factual that I hope would add to the court's understanding of our position. And starting with the law, the parties are relying essentially on the same body of Ninth Circuit case law. The cases are Kaiser, Manawright, Choi, Olano, Castaneda, and the more recent Yates case to a certain extent. When I read those cases, and I hope the court has read them carefully, I'm sure it has, I see a common thread. And the common thread is whether the court is reversing or affirming, what the court seems to be looking for is evidence that the defendant was directly and personally participating in the underlying substantive conduct that the jury was asked to find. So the court reversed in Kaiser, it affirmed in the other cases by and large. But the common denominator is, did the defendant personally do it? And so what that means is when you lose a conspiracy count and you lose Pinkerton, you can make the analysis of, well, was Pinkerton kind of just a belt and suspenders add-on anyway? Because if the defendant was personally distributing the drugs or personally laundering the money, he didn't really need Pinkerton. And so it's an easy way to say, oh, sure, he would have been convicted as a principal anyway. So the problem that I see for the government here is that what the jury was asked to find was the controlled by, from Johnson to the CI. And we know from the facts that Mr. Tejada wasn't even in the house. So that transference of a controlled substance did not personally involve Mr. Tejada, which is why the government has pivoted to a new theory, which is that Mr. Tejada delivered the drugs to Johnson, and therefore he should be on the hook for principal liability there. But the problem is, that's not what the jury was asked to find. And therefore, under this controlling body of Ninth Circuit case law, we don't have Mr. Tejada's direct participation. And therefore, we should ask the court to reverse it. You've got his direct participation in the crime that is now being discussed. That is, it's apparent from the jury's verdict that they would have found him guilty if presented with the question of, did he distribute the drug to Johnson? I'm glad you asked that, Your Honor. Thank you. So first of all, they did have the Pinkerton instructions. So there certainly is a cloud overhanging that fundamental premise. Was there any cloud over that piece? Here's a cloud. There's a number of clouds. We have in our reply brief specifically listed, enumerated in bullet points over pages 4 and 5, a number of clouds. And I'll get to those in a sec. If they found him guilty, presumably having to do with the subsequent transaction, they must have found him responsible for having provided the drugs to Johnson. I disagree, Your Honor. So we have I'd be curious to find what theory would suggest otherwise. Give me a factual theory that suggests otherwise. Here's a factual theory. The overarching course of conduct that we have here, even taking the government at its own interpretation of events, is that Mr. Tejada came to the house, he went into the house, he left the house, and he came back. And in the intervening period after he left and came back, that's when Johnson left the house, got arrested in her car, kind of freaked out, and said, oh, he's coming back with drugs, get me off the street, he's coming back with drugs. Why would Mr. Tejada come back with drugs? It's a very reasonable inference that the first time he came, he either didn't have any drugs at all, or he didn't have all of them, or something like that, because according to her and according to the government, he had to come back with drugs. And I think that that's a partial explanation possibly of the jury's split. How he could be innocent of the distribution to Johnson piece. Well, so... And found guilty of the foreseeable part. Well, it's really interesting when you look at the split verdict, because remember the jury acquitted him of methamphetamine and convicted him of heroin. So the jury smelled a rat. And the question I'm trying to tease out here a little bit is, what kind of rat did they smell? So that's number one. He had to come back... Well, I'm still waiting for a factual scenario whereby he's not guilty of the distribution to Johnson.  which was before the controlled buy, he didn't have the drugs. He had to come back for the drugs. Number two, the text messages that the government's relying on... Came back with drugs and left them there, that's distribution. But the one... No, but he never made it back into the house. He never gave her those drugs. They all got arrested. My question really is the way this was presented as vicarious liability, and yet you do have the principal liability in the jury instruction. So is it fair in effect to say, well, the jury could have convicted on this, but that's not the theory that was argued to the jury. So it would take a fairly, arguably a sophisticated jury to kind of parse between what was argued to them and then what was in the jury instruction. So I would appreciate your comment on that, because that to me just seems to be a threshold issue. And if you're right on that issue, end of story. If you're not right, then we have a more complicated road to go down. I appreciate that. Thank you. Yeah, so we presented at least two legal reasons why we're asking the court not to even entertain this new theory of principal liability, and your Honor just hit on them. And one legal framework is estoppel, which I guess can seem like some harsh medicine, but I think it's appropriate here. You know, the government has never in the eight-year history of this case articulated this theory of principal liability. And now that it's on... Has anybody applied estoppel in this context? I don't think so. If I had found a case, I would have provided it to the court. Yeah. Certainly, certainly. What's your best argument for saying that even though it's referenced, you know, in passing in the jury instruction, it was never argued, that was not what the jury was deciding? I'd refer the court to the Yates, the recent Ninth Circuit case, Yates that we cited. And Yates talks a lot about the importance of what was actually presented to the argument, to the jury. What theories were actually emphasized? And then, like your Honor suggested, like not reconstructing in hindsight what the jury could have found or what this panel could potentially have found, because that's not really what was emphasized at Mr. Tejada's trial. So they had... My question is that they were instructed on principal liability. Correct. And there's a split verdict, which indicates that they, I think, cuts against you because it looks as though they really did consider principal liability on the heroin count. It's unclear what they did, Your Honor. And so, with the Pinkerton issue before that... How does that qualify as plain error? I'm sorry? This is a plain error case. Yates wasn't. If you tell us it's unclear, how do we have plain error? Well, unclear in reference to... It's always a little bit difficult to tease out what a jury was thinking on a general verdict. And so, it looks like a compromised verdict to me. It looks like the jury was... Somebody on the jury didn't like the idea that Mr. Tejada brought those drugs. And so, whether it was the methamphetamine or whether it was the heroin is unclear. And it's actually interesting that they acquitted on the methamphetamine because, according to the government, that's the one he openly confessed in text messages that he already had. So, somebody on the jury didn't believe that. And I don't know how they ended up with heroin, to be honest. And sometimes, jury verdicts are a little bit inexplicable. And there's case law saying, you know, we don't always try to tease out what they did. But, as a matter of law, we know from Yates, Your Honor, that a split verdict does counsel against the finding of harmlessness because the jury was unsettled about something. And when they had Pinkerton, and the only theory the government ever argued was Pinkerton, I think the most reasonable inference is that they believed Pinkerton in some way, shape, or form about count five. And at a bare minimum, it's hard to say now. It's impossible for me to say now, beyond a reasonable doubt, that they didn't, which is the legal standard that we need to apply. And if I could reserve my time, thank you, Your Honors. Thank you, Your Honors. Good morning, and may it please the Court. Christopher Schroeder, on behalf of the aptly of the United States. We're asking this Court to affirm Alex DeHatta's conviction following a resentencing in this case. Your Honors, the decision to vacate the conspiracy conviction in count one would only affect substantive counts that were based solely and exclusively on Pinkerton liability. If the district court also instructed the jury on another theory of liability, and there is enough evidence to support a conviction on that alternate theory of liability, the Court must affirm on that basis. Here, there is no... How is it that count four dropped out? On remand, after this Court's first decision, the defendant moved to vacate count four because the verdict form in count four had the same defect as the verdict form in count two that this Court vacated the first time. So the government agreed with that motion and agreed to vacate count four. Count four was another possession with intent count where the verdict form said that the drugs were known or reasonably foreseeable to the defendant. But logically, how could that have been... How could that verdict have rested upon Johnson's actions? How could it have been based on the Pinkerton reasonably foreseeable? She wasn't charged there. It had to do with his physical possession. Just kind of lost, and it cuts both ways because it seems to me he clearly was guilty of that, but the government decided, okay, we'll agree to drop that. So why not agree to drop this one? So count four is based upon the drugs that he had in his pocket when he was booked into the jail, and that was another possession with intent count that was subject to the same defect as the verdict form in count two. The difference between that count and this count, and to address Your Honor's question directly, yes, I think the government did have a good argument to make that that was indeed harmless error because the drugs were actually in his pocket when he's booked in at the jail. It's much more difficult to see that as being unknowing possession than it is to see the drugs in the trunk of his car as unknowing possession. I can readily see how that would be conceivable, but if they're in his pocket, that seems pretty knowing to me. I think the difference between that verdict form and this verdict form is that count five is a distribution count. Count four was possession with intent. It's much easier to understand how someone could unknowingly possess something than it is to see how someone could unknowingly distribute something. For that error in the verdict form at count five to be dispositive, to be outcome determinative, the jury would have had to believe that he walked into Laura Johnson's apartment, unknowingly distributed heroin to her, but did so in a manner that was reasonably foreseeable to him. And I really struggle to see how we get between all of the rocks that are set on that course. I don't see how the jury could have come to that conclusion. So I don't think that the verdict form for count five, that the error in that verdict form, could possibly have made a difference. I don't see how that could be unknowing distribution. What bothers me is that the whole trial vis-a-vis Tejada is based on vicarious liability, and basically I read these arguments in the closing argument. Now, defendant wasn't the one that sold. He was part of the conspiracy. Laura Johnson committed the crime of distribution. As the facts make clear, Johnson, not defendant, sold meth and heroin. And is there anywhere in your argument where you present principal liability at the trial? Yes, Your Honor. We did in a number of places. First, I think the most important fact is that the district court instructed the jury on principal liability. No, my question is what was argued to the jury? We did argue principal liability in a number of points. Now, the prosecutor didn't use the words principal liability. What are your best citations for me to look at on that point? Yes, Your Honor. So at docket 82, the government submitted proposed jury instructions that contained the principal liability instruction. Yeah, we already went over that. That's the instruction. In opening statement, the government said, quote, the evidence will show actual distribution. As I mentioned, on November 14th, Ms. Johnson and the defendant conducted a sale. Ms. Johnson had someone come to the residence and purchase a small amount of drugs, and these are the drugs the defendant provided. And the final closing argument, the government also said, quote, you heard again the testimony of Ms. Johnson. She contacted the defendant on the 14th looking for drugs. He said he'd bring them over, meth and heroin, and what did he do? He brought them over, the ones that she ultimately sold. In addition to that, you have the government presenting evidence throughout the case that the defendant personally provided these drugs to Laura Johnson. This is what all of the testimony from Johnson and from the officers outside the apartment was intended to show. If the government only was going to rely upon Pinkerton liability, the only things that would have been necessary for it to prove would be that Laura Johnson distributed drugs to the CI, which she testified that she did, and that she was in a conspiracy with the defendant for drug distribution, which the text off the defendant's phone clearly indicate that she was. If the government was relying solely on Pinkerton liability, those would have been the only two things that it had to prove. But you have all this other evidence about the purse in her apartment and the changing locks on the doors, that he's the only person who has access, the officers who testify that they see him go into her apartment not once but twice, the second time carrying a dark bag. You have the fact that they follow him afterwards and that he's arrested coming back to the scene in a car with 163 grams of meth and 91 grams of cocaine in the trunk, that he runs from the police officers, that he throws away a pill bottle that contains more heroin, and the text messages on the phone I think are the most important evidence in the case. My friend on the other side brought up the fact that there's the split verdict on Count 5. Before you finish, is there anything in the prosecutor's closing that argues principal liability? Only the things that I previously discussed. Because those seem to me to be pretty vague and general, and they don't really appear to support the principal liability theory. I think the prosecutor is arguing at both times that the defendant personally provided the drugs to Laura Johnson, and at one point he actually says actual distribution. Now he could have said the words principal liability. He could have then explained to the jury, and by the way there is a second alternate theory that you can also convict upon even if you don't buy the Pinkerton argument. He could have done that, but I've been in that position. I've been the prosecutor who's argued multiple theories to the jury at closing. Well, in multiple theories you would say, normally you would take the jury instruction and you'd say there are two ways you can convict this individual. You've got this vicarious liability over here, and here's the reason, and you've got this because you have to follow these jury instructions. So that's why I was having trouble discerning from the prosecutor's argument where this was actually argued in terms of saying, can we determine and beyond a reasonable doubt that that's what they convicted on. I would certainly agree that the prosecutor could have been clear about bookmarking one theory versus another theory, but he didn't necessarily have to be. The key fact, I think, is that he presented the evidence to support the principal liability theory to the jury. Now I want to go back to this issue of the split verdict form on Count 5 because I think it's actually very important in this case. My friend on the other side makes the argument that the jury was given a verdict form for Count 5 that had blank spots next to distributed heroin and distributed methamphetamine, and they only checked heroin. My friend on the other side wants you to believe that that's a negative reflection on Laura Johnson's credibility, and to an extent I think that's true. I think it is because she testified that she distributed both meth and heroin to the CI, and that's what the CI provided to the police. So at first glance, it looks like that's a bad point for the government. But the text messages on the defendant's phone only talk about heroin. You have a text message from the defendant to Laura Johnson, specifically right before this deal where he says, I have to get the black, tell her to come over, and there's testimony from several witnesses that the black refers to heroin. There's no corresponding text referring to methamphetamine. In fact, when she texted him about methamphetamine the day before and asked to buy some clear, he says, I'm not going out today. So there is no text from him indicating that he's bringing methamphetamine. There's only a text indicating that he's bringing over heroin. And I think if the jury had some questions about Laura Johnson's credibility, I think that text message pushes it over the top, specifically with regard to the heroin, and I think that's how you explain the split verdict form on Count 5. How do we invoke the plain error standard? It's kind of an odd situation here. So which prong or aspect of plain error do you think that your case rests on? I don't think that there's any error here that was clear or obvious. Neither party raised this in the proceeding below. There was no objection to the Pinkerton instruction at trial. I don't think that there is a violation of the defendant's substantial rights such that would be outcome determinative in this case. I think that third prong of plain error basically gets you back to the question of whether principal liability applies. Because if principal liability did apply, then there's no outcome determinative error here and there's no effect on the defendant's substantial rights. I think that's how you fit this into the test for plain error. The last point I want to make, I sense that the Court is not terribly curious about the estoppel argument, but judicial estoppel requires the government to take a position that is directly contrary to or clearly inconsistent with a prior position. Pinkerton liability is not directly contrary to or clearly inconsistent with principal liability. They're complementary theories. This Court has held that district courts can instruct on both theories at the same time. You can instruct on all three theories, including aiding and abetting. The jury doesn't need to be unanimous as to a particular theory, and they're not factually inconsistent either. It's fully conceivable that the defendant would personally distribute drugs to Laura Johnson and then she would sell them to the CI in furtherance of the conspiracy. Those aren't contradictory theories. They're complementary. And the other problem with the estoppel argument is that judicial estoppel requires the government to take a position that imposes an unfair benefit and gains an unfair advantage or imposes an unfair benefit on the defendant. And that, I think, gets back to the argument about principal liability because the only way that that would be true is if principal liability doesn't apply. So the estoppel argument, I think, essentially becomes circular and you're back to the question of does principal liability apply. And in light of the text messages, I think it very clearly does in this case. I see that I've used my time, so unless there are any further questions from the panel, I would ask you to affirm Mr. Tejada's convictions. Thank you, counsel. Thank you. I was a little perplexed by counsel's argument about the text messages because in the brief at page 3, the characterization of the text messages is this. Tejada responded that he could supply the methamphetamine but would have to acquire the heroin. That's how the government interpreted the text messages, that he had the meth but he needed to get the heroin. And that explains, at least arguably, why he's going back and forth because he didn't actually have either any of the drugs or all of the drugs. So the alleged distribution to Johnson before the controlled buy could very well not have happened. That's why he was coming back. And, Judge Clifton, I think that speaks to your point. The other issue about this is that's why Pinkerton liability was so much stronger for the government on count five than principal liability, and that's why the court should not be able to find beyond a reasonable doubt that the jury would have convicted him of principal liability, in addition to the fact that the government never asked them to. So to the point of, yes, what kind of rogue juror would go find some theory that not even the prosecutor asked them to? That's a very legitimate question. I don't think any would. But we have the nonexistent delivery bag. It didn't exist. They conducted a thorough search and they found pounds of drugs in her house, paraphernalia, this, that, and the other thing, and this suspicious delivery bag from his trunk they never found. My contention is it never existed. Johnson admitted she never actually saw him come into the house before they controlled by and delivered the drugs. She told that to the jury because she was in the shower. She just said, I think it was him. She had multiple suppliers. She admitted that to the jury too. So we know that all these drugs that the government attributed to Mr. Tejada that were in her house, much of which the jury rejected, in terms of especially the pound of methamphetamine, could have come from somebody else. The jury knew that. We know she was a cooperator. We know we had the pattern instruction telling the jury to be cautious about her testimony as a result. We know they were cautious about her testimony as a result because they asked about her sentencing benefits. We know that they rejected the pound of methamphetamine. We know they rejected methamphetamine at count five. So for the government to come in here and say, principal liability is just as strong as Pinkerton liability, Your Honors, just as strong, that's not true. And we know that from their own behavior because, as the court pointed out, they never actually argued it, and that's why, because it was weak. And I can see that I'm out of time, Your Honors. Thank you, Counsel. Thank you. This argument will be submitted for decision. Thank you both for your arguments this morning. We'll proceed.
judges: THOMAS, McKEOWN, CLIFTON